In re LAMBERTVILLE RUBBER CO., Inc.
MILL FACTORS CORPORATION v.
CROWLEY.
No. 7192.

Circuit Court of Appeals, Third Circuit.
March 20, 1940.

McDermott, Enright & Carpenter, of Jersey City, N. J., and Sperry & Yankauer, of New York City (Walter D. Yankauer, of New York City, and James D. Carpenter, Jr., and Samuel M. Coombs, Jr., both of Jersey City, N. J., of counsel), for appellant.

Backes & Backes, of Trenton, N. J. (H. W. Backes, of Trenton, N. J., of counsel) for appellee.

Before BIGGS, MARIS, and JONES, Circuit Judges.

BIGGS, Circuit Judge.

The question presented by the appeal at bar is whether a trustee appointed pursuant

to Section 77B[1] of the Bankruptcy Act as amended, first to operate the debtor's business and then to liquidate its assets, may be surcharged because he has paid certain Federal Social Security taxes and state unemployment compensation taxes, it appearing upon liquidation that the assets of the debtor are insufficient to meet expenses of administration in full.

The facts are as follows. Upon April 27, 1937 an involuntary petition having been filed against the debtor, the appellee was appointed trustee. Funds came into his hands and from these he paid a total of $9,118.89 to the United States and the State of New Jersey for the taxes referred to, which then admittedly were due and owing. No proofs of claim had been filed by the United States or the State of New Jersey. The order appointing the appellee as trustee provided a date by which all claims were to be filed and expressly prohibited the payment of claims by the trustee. After the entry of an order of liquidation upon January 12, 1938 pursuant to the provisions of Section 77B, sub. k, the trustee paid to the Federal and State governments additional sums totalling $2,-316.76 on account of similar taxes which had accrued after his appointment but before the order of liquidation was made.

The appellant, Mill Factors Corporation, a financing company which discounted accounts receivable for the trustee, is an administration creditor in the sum of $40,000 for services rendered the trustee while he was engaged in operating the debtor's business. In the court below Mill Factors sought to surcharge the trustee for the sums paid by him on account of these taxes. It also objected to the payment of a fee to the trustee in the sum of $500 in addition to a regular weekly compensation of $85 theretofore allowed and paid to him. The referee and the District Court refused to surcharge the trustee except to the extent of $500 representing a sum paid by him to the United States on account of Old Age Pension insurance, and allowed him the fee. The appeal at bar followed.

As to the Taxes Accrued and Owing
Prior to the Trustee's Appointment.

Section 901 of the Social Security Act, Act of August 14, 1935, c. 531, Title IX, § 901, 49 Stat. 639, 42 U.S.C.A. § 1101 provides that every employer of eight or more shall pay on or after January 1, 1936 a tax based upon amount of payroll. The debtor was within the category indicated. Section 902 provides that such a taxpayer may credit against the tax imposed by Section 901, a sum not to exceed 90 per centum of the amount of contributions paid by him into an unemployment fund authorized by the law of a state. The unemployment compensation law of New Jersey (Revised Statutes of New Jersey, 1937, 43:21-14, N.J.S.A. 43:21-14), became effective December 22, 1936. Article 303 of Regulations 90, promulgated in respect to the Federal Unemployment Insurance Law required that the State tax accruing against the employer during the year 1936 be paid by January 31, 1937, if the 90% credit was to be available to the taxpayer. This date was extended to April 1, 1937 by T.D. 4726. The Regulations (Section 1:02), promulgated in connection with the unemployment compensation law of New Jersey, required that 1936 reports should be filed and payments should be made to the State no later than March 31, 1937 and that taxes due for the first quarter of 1937 should be paid on or before April 30, 1937.

The trustee, shortly after his appointment, believing that he had an agreement with the Executive Director of the State Unemployment Compensation Commission, paid the sum of $7,144.94 to the State of New Jersey. Of this total, $5,201.38 represented unemployment compensation taxes due from the debtor for the year 1936, and the balance was for these taxes for the year 1937 accruing to the date of the trustee's appointment. The appellee attempts to justify this payment upon two grounds: first, he contends that since the object of the proceedings was to rehabilitate the debtor the payment of the taxes was necessary to that end; and, second, he contends that they were a lien upon all of the property of the debtor and therefore had to be paid in any event.

It is clear that the payment by the trustee of the taxes due to the State of New Jersey enabled the debtor to secure advantage of the credit provided in Section 902 of the Social Security Act. Under more favorable circumstances such a course might have been deemed desirable, but since the debtor was not reorganized, the payment was not justified. It may be

---

[1] Act of June 7, 1934, c. 424, 48 Stat. 911, 916, 11 U.S.C.A. § 207.

contended that this ruling places a burden of prescience upon the trustee, but we think that this is not the case. The trustee is charged with an intimate knowledge of the estate which he is administering and if he pays claims out of time and without the protection of an order of the court affirmatively authorizing such conduct, he must be certain that such payments will work no harm to any creditor. Under such circumstances he acts at his own risk and if his judgment is bad, he must accept the consequences. Such a rule is peculiarly applicable when the trustee as here makes payments not only without notice but without claims being filed, and in violation of the decree of the court appointing him.

■■ Was the New Jersey Unemployment compensation tax a lien upon all the property of the debtor at the time the trustee paid it? The trustee relies upon the provisions of Section 14(b) of the unemployment compensation law of New Jersey, Revised Statutes, 1937, 43:21-14 (b), N.J.S.A. 43:21-14(b), which states that the tax and its penalties shall be a personal debt of the employer, and that: "Such debt * * * shall be a lien on all the property of the debtor except as against an innocent purchaser for value in the usual course of business and without notice thereof, and shall have preference in any distribution of the assets of the employer, whether in bankruptcy, insolvency or otherwise." Subsection (f) of Section 14, however, provides in part: "In the event of an employer's adjudication in bankruptcy, judicially confirmed extension proposal, or composition, under the federal bankruptcy act of 1898, as amended, contributions then or thereafter due shall be entitled to such priority as is provided in section sixty-four (b) of that act (U.S.C., Title XI, sec. 104(b), as amended)." We consider it unnecessary to answer the question as to whether the taxes due and owing to New Jersey at the time of the appointment of the trustee were liens upon the debtor's property at the time they were paid, for even assuming them to have been liens at that time, this fact alone did not entitle them to immediate payment for they were liens of a character which would become simple priorities upon the happening of the contingency referred to in Subsection (f) of Section 14. When the trustee paid these taxes, he was charged with knowledge that if the provisions of subsection (f) of Section 14 became operative, the liens of the taxes would be transformed into priorities to be paid in accordance with the provisions of Section 64 of the Bankruptcy Act of 1898, as amended.[2] The language of subsection (f) of Section 14 read in the light of the words employed in subdivision k of Section 77B, viz., that an order for the liquidation of a debtor's estate " * * * shall have the same consequences and effect as an order of adjudication.", permits of no other construction. Turning now to the provisions of Section 64 of the Bankruptcy Act we find that subsection a requires the court to order the trustee to pay all taxes regularly due and owing by the bankrupt to the United States or to any State in the order of priority described in paragraph b. Paragraph b provides that expenses of administration shall have priority of payment over taxes due to the United States or to any State. It follows that the administration claim of the appellant was entitled to priority of payment over the tax claim of the State of New Jersey.

■■ As to the payment to the United States of the sum of $1,973.95, it can scarcely be contended that such payment was necessary to enable the debtor to reorganize, and since the trustee elected to pay this sum out of time and in defiance of the order of the court appointing him he must be deemed to have paid it at his own risk. Nor may it be contended that the claim of the United States was a lien upon the property of the debtor. R.S. § 3186, May 29, 1928, c. 852, Sec. 613, 45 Stat. 875, 26 U.S.C.A.Int.Rev.Code § 3671, provides that the lien of a tax due the United States shall arise when the assessment list is received by the collector. The record of the case at bar is devoid of any evidence that an assessment list including this item of tax was ever received by the collector of the district in which the debtor maintained its office or place of business. It follows that the claim of the United States for taxes was not secured by a lien but was entitled to priority simply as provided by Section

[2] It must be borne in mind that as of this date, April 27, 1937, Section 64 of the Bankruptcy Act had not become subject to its later amendments. See the amendatory Act of June 22, 1938, c. 575, Sec. 1, 52 Stat. 840, 874, 11 U.S.C.A. 104.

64. For this reason the administration claim of the appellant was entitled to priority over the claim of the United States.

The court below in refusing to surcharge the trustee laid emphasis upon the (Chandler Act) amendments to the Bankruptcy Act passed and approved on June 22, 1938, c. 575, 52 Stat. 840, 11 U.S.C.A. 104, sub. a. These amendments became effective on September 22, 1938. The trustee made the payments under discussion no later than the end of April, 1938. We think that the rights of the parties became fixed in so far as a surcharge is concerned when the trustee made the payments objected to. The District Court, however, was of a contrary opinion and concluded that by virtue of the provisions of Section 6, sub. b, of Chapter 575, 52 Stat. 940, note to 11 U.S.C.A. § 1, the provisions of the amendatory Act governed the question of surcharge. We think that the negligence of the trustee's acts must be judged in the light of the law as it was at the time when these acts were committed. But, if the amendments of 1938 be assumed to control the trustee's liability, he is in no better position for as we have stated Section 64, sub. a, 11 U.S.C.A. 104, sub. a, determines priorities of payment. See subdivisions (1) and (4) of paragraph a of that Section. The learned District Judge, however, referring to the provisions of Section 67, sub. b, of the Bankruptcy Act, as amended by the Act of June 22, 1938, c. 575, 52 Stat. 875, 11 U.S.C.A. 107, sub. b, which provides that where tax liens "are required to be perfected and arise but are not perfected before bankruptcy, they may nevertheless be valid, if perfected within the time permitted by and in accordance with the requirements of such laws [of the United States or the States], except that if such laws require the liens to be perfected by the seizure of property, they shall instead be perfected by filing notice thereof with the court" and concluded that since the State of New Jersey could have perfected a lien for taxes even after the entry of the order of liquidation, it must be put in the same position as if it had done so. The court then stated [27 F.Supp. 897, 901]: "Since the state had the power to complete its lien, the same reasoning applied in the case of the federal government's taxes is relevant: namely, the taxes have been paid and it was unnecessary for the state to perfect its security; without payment the state could have established a valid lien and collected one hundred per cent; therefore, no reason exists for surcharging the trustee."

The conclusion thus expressed is erroneous. The District Court refused the surcharge because it was of the opinion that since the United States and the State of New Jersey could have perfected their liens their claims must be treated as if they had done so. We cannot approve such a principle. A tax lien is created by doing certain acts provided by statute. If those acts are not accomplished, no lien comes into being.

It must be borne in mind that the claims of both the United States and the State of New Jersey considered in this portion of our opinion were claims against the debtor and not against the trustee since they arose prior to the trustee's appointment and the approval by the court of the petition for reorganization.

### As to Taxes Paid by the Trustee After the Order of Liquidation.

Following the order of liquidation of January 12, 1938, the trustee paid a total of $2,316.76 to the United States and the State of New Jersey for Social Security taxes and New Jersey unemployment compensation taxes. This total included the sum of $705.36 for Old Age Pension insurance pursuant to the Act of August 14, 1935, c. 531, Title II, Sec. 201, 49 Stat. 622, 42 U.S.C.A. § 401, of which the employees advanced $205.36, leaving a balance of $500 paid by the trustee on this account. The referee recommended to the District Court that the trustee be surcharged as to this $500 " * * * with the difference between the $500 * * * and the amount which would be paid in dividends on the said claim [of the United States] * * *." The District Court confirmed this conclusion and the trustee has not appealed from its order.

The trustee was authorized expressly to carry on the business of the debtor. The taxes which he incurred were inescapable if that business was to be carried on. They were therefore expenses of administration when incurred. Section 77B, sub. k(5), provides that upon entry of an order of liquidation, "debts shall be entitled to priority as provided in section 64 [104];" We are of the opinion

that the word "debts" includes expenses of administration, which are debts incurred by the trustee. These debts of the trustee included the claim of the appellant, the taxes and all other expenses of administration. All were on a parity before the entry of the order of liquidation and they remained upon a parity after the order of liquidation was filed. All were payable as expenses of administration pursuant to the provisions of Section 64 of the Bankruptcy Act as amended.[3] In short, the claim of the appellant was and is entitled to share in the corpus of the estate upon an equal footing with the taxes referred to under this, the second heading of this opinion.

### Conclusion.

We conclude that the trustee acted negligently in paying the taxes referred to in this opinion. He must therefore be surcharged. United States ex rel. Willoughby v. Howard, 302 U.S. 445, 58 S. Ct. 309, 82 L.Ed. 352; In re Hoyt & Mitchell, D.C., 127 F. 968; In re B. A. Montgomery & Son, D.C., 17 F.2d 404; Amendatory Act of June 22, 1938, 11 U.S.C.A. 104, sub. a. The extent of that surcharge must be determined by the District Court. We cannot do so upon the record before us. As to the taxes first paid by the trustee, amounting to $9,118.89, it is obvious that such taxes, which are merely claims against the estate, may not be paid until the expenses of administration are paid in full. As to the taxes paid in the second instance by the trustee from the funds of the estate, amounting to $2,111.40,[4] such taxes rank upon a parity, but only upon a parity, with the other expenses of administration including the claim of the appellant. The surcharge to the trustee must be based upon these fundamental conclusions.

In respect to the fee of $500 allowed by the referee and the District Court to the trustee, we are of the opinion that the learned trial judge did not abuse his discretion in approving this allowance "subject to the surcharge".

The appellant has restricted its appeal to the refusal of the District Court to surcharge the trustee upon the tax items which we have referred to. No other portions of the order on confirmation and objections to the report of the referee have been appealed from. Accordingly, that order is modified by reversing paragraphs 2, 5 and 6 thereof to the extent and to the effect indicated in this opinion. The cause is remanded to the District Court for further proceedings in conformity herewith.

It must be borne in mind that while $2,316.76 was paid, as we have indicated heretofore $205.36 was advanced by the employees in payment of Old Age Pension insurance.

---

[3] The applicable amendment was by the Act of May 27, 1926, c. 406, Section 15, 44 Stat. 662, 666.

[4] The sum of $2,111.40 constituted the sum paid out of the assets of the estate by the trustee upon this group of taxes.