**COLONNA'S SHIPYARD, Inc., v. ROWE, County Treasurer.**

**THE A. BROOKE TAYLOR.**

(Circuit Court of Appeals, Fourth Circuit. June 8, 1926.)

No. 2463.

1. **Taxation** ⚖510—**Taxes held payable from proceeds of vessel sold before payment of maritime liens.**

Where a vessel, owned by a corporation which owed current taxes to the state of Virginia and its municipalities, was seized in an admiralty suit before the time when the county treasurer had the right to distrain, and subsequently sold, the taxes constituted a lien, and the treasurer was entitled, on intervention in the suit, to have the taxes paid from the fund in court, realized from the sale, before payment of maritime liens.

2. **Admiralty** ⚖101—**Intervention to assert lien for taxes held timely.**

An intervention to assert a lien for taxes against the proceeds of a vessel sold was in time where it was made during the term at which the sale was made and before the fund had been distributed.

3. **Taxation** ⚖514—**Removal of vessel from county in admiralty proceedings held not to defeat lien for taxes.**

A lien on a vessel for taxes was not lost by seizure of the vessel in admiralty proceedings and its removal from the county to another place in the same district.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Suit in admiralty by Margaret E. Willing, administratrix, against the steamship A. Brooke Taylor; the Virginia Fisheries, Incorporated, claimant. From an order allowing claim for taxes of Carroll J. Rowe, Treasurer of Northumberland County, Virginia, Colonna's Shipyard, Incorporated, appeals. Affirmed.

Henry H. Little, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellant.

D. Arthur Kelsey, of Norfolk, Va. (R. Arthur Jett, Jr., and Kelsey & Jett, all of Norfolk, Va., on the brief), for appellee.

Before WADDILL and PARKER, Circuit Judges, and COCHRAN, District Judge.

WADDILL, Circuit Judge. This is an appeal by Colonna's Shipyard, Incorporated, intervener in the admiralty proceedings of Margaret E. Willing, administratrix, etc., against the steamship A. Brooke Taylor and the Virginia Fisheries Company, owner of said vessel, from the decree entered by the United States District Court for the Eastern District of Virginia on October 3, 1925, decreeing to Carroll J. Rowe, treasurer of Northumberland county, also an intervener in said admiralty proceedings, the amount of certain state and county taxes, to wit, $420, assessed against the said steamship for the year 1924. The facts in the case are briefly these:

The Virginia Fisheries Company, the owner of the A. Brooke Taylor, had its home office in Northumberland county, Va., and the home port of the Taylor was Reedville, in that county. Taxes for the year 1924 were assessed against the vessel, $370 for county purposes, and $50 for state purposes. In that year the tax lists of Northumberland county were placed in the hands of the county treasurer on the 13th of September, and the treasurer, on the 17th of October, 1924, gave notice in the usual course to the Virginia Fisheries Company, demanding payment of the taxes. He did not know at the time of the libel of the vessel in the admiralty proceedings. He received no reply to his demand for payment of the taxes; and on the 1st of December, 1924, a penalty of 5 per cent. accrued on the taxes under the state

statute. On the last-named date the taxes were placed on the list of unpaid current taxes for which the treasurer was authorized and required, until the 15th of June, 1925, to distrain for their collection, and to account as of said date therefor with the state and county authorities.

In the libel proceeding aforesaid, on the 8th of December, 1924, the decree of sale of the steamship was entered, and subsequently, on the 22d of December, 1924, the vessel was sold in said county, at Ditchley, Va., at public auction, pursuant to such decree. The proceeds arising from the sale of the steamship, amounting to $22,000, were promptly paid into court after the sale, and by decree of February 3, 1925, the money was decreed to be paid to the creditors according to their priorities, the court directing that the checks drawn under said decree be held 10 days to enable parties desiring to contest the decree to do so. The appellee, the county treasurer, neither knew of the libel of the vessel nor of the sale thereof on the 22d of December, 1924, and did not learn thereof until some time in January, 1925, when he promptly secured the services of counsel at Norfolk and caused his petition herein to be filed, setting up his claim to the taxes in question.

This petition was filed in the clerk's office on the 12th of February, 1925, the judge being absent from the city at the time, and upon his return on the 16th of February, 1925, the petition was formally presented and filed in court. On the last-named date, the appellant, Colonna's Shipyard, Incorporated, filed its formal answer to the treasurer's petition, denying the liability for the taxes, insisting that no lien existed for the payment of the taxes in question, certainly none superior to that of a maritime claimant, and that the petition asserting said tax lien was not filed in time to participate in the distribution of the funds arising from the sale of the vessel. The court, after full consideration of the case, adjudged the liability and lien for the taxes to exist, and entered its decree of the 3d of October, 1925, providing for their payment, with costs, from which decree the appeal herein is taken.

The assignments of error present three questions for our consideration: First, as to the existence of a right to a lien at all by the state and county for taxes; second, whether the same takes precedence over a maritime claimant; third, whether claims for taxes were filed within time to share in the distribution of the fund arising from the ship's sale under the control of the court. The first two questions will be considered to-gether, as they relate to the same feature of the case.

[1] The appellant's theory is that the taxes involved were delinquent taxes, as to which the right to a lien on the vessel did not exist, and, if it did, that the levy should have been made upon the ship in order to make the same effective. In our view, appellant is in error in both positions taken. The supposed absence of a lien for taxes at all is apparently predicated upon a decision of the Court of Appeals of Virginia in Jackson Coal, etc., Co. v. Phillips Line, 114 Va. 40, 50, 75 S. E. 681, and a decision of this court, and of the Supreme Court of the United States, in Bird et al. v. City of Richmond, 240 F. 545, 153 C. C. A. 349; affirmed in 249 U. S. 174, 39 S. Ct. 186, 63 L. Ed. 543. These cases dealt with delinquent taxes, for which formal return and determination to that effect had been made, and not with current taxes, for which no opportunity had been afforded to make the levy necessary to their collection. During October and November of the year for which the taxes were due, 1924, formal opportunity was given to all persons to pay their taxes, and notice duly given advising them when and where to do so. Between the 1st of December, 1924, and the 15th of June, 1925, the right of distraint and seizure existed for the collection of such taxes. Without this right of lien and distraint to collect current taxes, the state and counties would quickly find themselves without the means to properly discharge their governmental functions. The fact that the vessel was seized on the 11th of October, 1924, and sold on the 22d of December, 1924, during the period that the taxes remained in the hands of the treasurer for collection, and before the right of levy and seizure therefor existed, clearly should not prejudice the treasurer's right to collect the taxes by means of intervention in the admiralty proceeding, since before the first moment he could have distrained the vessel had been sold, and the proceeds therefrom remained undistributed in the custody of the court. Manifestly the treasurer's only remedy, as against the fund arising from the sale of the vessel against which his tax lien existed, was to apply to the court having control of such fund for the payment of the taxes.

The case of Taylor v. Sutherlin-Meade Co., 107 Va. 787-796, 60 S. E. 132, 136 (14 L. R. A. [N. S.] 1135), will be found of interest as bearing on the action of the court in this case, and shows, at least, what the policy of Virginia is in circumstances like the present. The court in this case said: "Though that particular question is no lon-

ger vital, we are of opinion that, under the general doctrine which obtains in such cases, and in accordance with the provisions of Code Va. 1904, § 492b, the duty devolved upon the court, before distributing the fund under its control, to provide for payment of taxes and levies due by the company. It would, indeed, be an anomalous result if either the receiver or attaching creditors could come into the courts of the state and invoke their aid to take charge of and administer the assets of an insolvent foreign corporation (thereby preventing the state and city from exercising their right to levy on the property of such corporation to enforce payment of taxes), and at the same time deny the power of the court to discharge the taxes out of the fund that it is called on to administer. It is the universal rule that a court, as the representative of the sovereignty of the 'state, will make no order for the distribution of funds in custodia legis until provision is made for payment of taxes and levies due to the commonwealth and its municipalities."

[2] The contention of appellant that the petition was not timely filed is equally without merit. The decree of distribution filed on the 3d of February, 1925, specifically provided that the checks should not be delivered for 10 days. The petition in the case was filed in the clerk's office on the 12th of February, only nine days thereafter, and in open court on the 16th of February, before the checks were delivered. Clearly, in these circumstances, and during the same term of the court, it was within the court's discretion to entertain an excluded creditor holding a lien of the high dignity of a current tax due the commonwealth and one of its counties, and the same should not be denied under any interpretation to be properly placed upon the admiralty rules as to reopening default decrees. This is clearly so where, as here, the court withheld the delivery of the fund under its control, and the appellee, the tax officer, applied within such period for payment of the taxes due. In the Matter of Howard, 76 U. S. (9 Wall.) 175, 19 L. Ed. 634.

[3] The appellant's further suggestion that the lien for taxes was lost because the vessel was removed from the county, and hence without its jurisdiction, is likewise not well taken. The property in this case was a ship, subject to the maritime jurisdiction, and it was seized by the marshal of the court having jurisdiction as well at the city of Norfolk, where the proceedings were instituted, as at the place at which the vessel was seized and sold, and therefore no rights properly attachable either to the ship, or to the money arising from the sale thereof, were lost by such removal of the property from one place to another, not over 100 miles distant, and all within the jurisdiction of the court in which the vessel was libeled and sold.

The decree appealed from is plainly right, and will be affirmed, with costs.

Affirmed.