In re PENNSYLVANIA CENTRAL BREWING CO.

Appeal of LUZERNE COUNTY et al.

Appeal of CITY OF WILKES–BARRE.

Nos. 7329, 7373.

Circuit Court of Appeals, Third Circuit.

Sept. 20, 1940.

R. Lawrence Coughlin and Edwin B. Morgan, both of Wilkes-Barre, Pa., for appellants.

Jerome P. Casey, J. D. Reifsnyder, J. Julius Levy and Stark, Bissell & Reifsnyder, all of Scranton, Pa., for wage claimants-appellees.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

The appeals at bar arise under the following state of facts.

Pennsylvania Central Brewing Company, the bankrupt, owned the Reichard & Weaver Brewery property located in Wilkes-Barre, Luzerne County, Pennsylvania.[1] The appellees are wage claimants whose claims have been allowed and have been ordered paid. The appellants are municipal corporations of the State of Pennsylvania. Liens for taxes on behalf of the appellants, Luzerne County, Central Poor District of Luzerne County, Luzerne County Institution District, and the City of Wilkes-Barre, were duly recorded. The liens on behalf of the first three appellants amount to $6,141.27; those of the City of Wilkes-Barre amount to $8,808.23. Luzerne County is the collector for itself and for the two appellants which are named second and third, respectively, while the City of Wilkes-Barre is its own collector.

Upon December 18, 1934, a petition for the reorganization of Pennsylvania Central Brewery Company was filed in the United States District Court for the Middle District of Pennsylvania pursuant to the terms of Section 77B of the National Bankruptcy Act, as amended. 48 Stat. 911, 11 U.S.C.A. § 207. The following November the special master recommended the liquidation of the bankrupt's estate and upon January 6, 1936 a rule issued upon all creditors, stockholders and others in interest to show cause why a sale of the property of the bankrupt should not be made by the trustees free and clear of all liens and encumbrances. Certain objections to the proposed sale having been overruled, upon July 16, 1936, an order was entered by the court directing the liquidation of the estate in the possession of the trustees in bankruptcy, the sale to be conducted in accordance with recommendations made by the special master. On February 20, 1939, the real estate and buildings of the Reichard & Weaver Brewery were sold for the sum of $16,000 free and clear of all liens and encumbrances, in accordance with the order of July 16, 1936. On January 4, 1940 the special master filed a report in which he recommended that the claims of the appellants be relegated to a position of payment after administration costs and wage claims. The effect of this recommendation, if carried out, would be to cause expenses of administration and the wage claims to be paid, leaving no further funds in the hands of the trustees for payment of the liens of appellants. Exceptions filed by them were dismissed after hearing by the District Judge who upon January 22, 1940 directed the trustees to distribute the assets in accordance with the master's report. The appeals at bar followed.

The court below decided, 30 F.Supp. 930, that the word "taxes" as used in Section 64 of the Bankruptcy Act, as amended by the Chandler Act, 11 U.S.C.A. § 104, does not embrace perfected tax liens which are valid statutory liens laid on in accordance with state law.[2] It held that such liens are entitled to payment in full pursuant to Section 67, sub. c, 11 U.S.C.A. § 107, sub. c., ahead of the priorities set up by Section 64, and out of the proceeds of the sale of the bankrupt's property diminished only by the actual expenses of preserving the property and by administrative expenses applicable to its sale. The learned District Judge thereupon held that the proceeds from the sale of the Reichard & Weaver Brewery Company, viz., $16,000, would be liable for the taxes assessed against the particular property, but not for the taxes assessed generally against the bankrupt. He found, however, that the appellants had acquiesced in a course of administration by the trustees which made it impossible to ascertain the administrative expenses to be charged specifically against the sale of the Reichard & Weaver real estate and cited as an example of such acquiescence that personal property at the Reichard & Weaver plant had been sold along with the personal property in the E. Robinson plant at Scranton. The District Judge held that the appellants had waived their rights to have

---

[1] The bankrupt had also owned the John Arnold Brewery and its real estate in Hazleton, in Luzerne County. This property passed out of the estate by sale and the foreclosure of a purchase money mortgage.

[2] Act of 1931, May 29, P.L. 280, sec. 4, as amended, 1933, May 22, P.L. 940, sec. 1, 1939, June 20, P.L. 498, sec. 2, 72 P.S. Pa. § 5971d; and Act of 1923, May 16, P.L. 207, sec. 2, 53 P.S.Pa. § 2022

charged against the $16,000 fund the expenses of selling that real estate alone, and concluded that they had in effect waived their rights to liens against the fund.

The appellees in their argument before us do not endeavor to support the position taken by the District Court, but advance a very different theory. They contend that Congress has power under Clause 4 of Section 8, Article I, of the Constitution of the United States to subordinate taxes to wage claims in bankruptcy proceedings, citing United States v. Fisher, 2 Cranch 358, 2 L.Ed. 304; Guarantee T. & T. Co. v. Title Guaranty & S. Co., 224 U.S. 152, 32 S.Ct. 457, 56 L.Ed. 706, and Oliver v. United States, 268 U.S. 1, 45 S.Ct. 386, 69 L. Ed. 817. Such is certainly the law. The appellees go further, however, and while conceding that prior to the provisions of the Bankruptcy Act as added June 22, 1938, c. 575, Sec. 1 et seq., 52 Stat. 840, 11 U.S. C.A. § 501 et seq., there was no provision of law whereby tax liens were subordinated to wage claims, citing City of Richmond v. Bird, 249 U.S. 174, 39 S.Ct. 186, 63 L.Ed. 543, and the decision of this court in Miners Savings Bank of Pittston, Pa. v. Joyce, 3 Cir., 97 F.2d 973, they contend that when the amendments of June 22, 1938 were enacted by Congress, the provisions of Sections 64 and 67 were rewritten to such an end.

The appellees make much of comparatively slight rearrangements within Sections 64 and 67 by the Act of June 22, 1938, 11 U.S.C.A. § 104, sub. a and § 107, sub. b. They point out that by the amendment to Section 64 wage claims were placed for payment immediately after expenses of administration, while taxes legally due a state or subdivision thereof were placed fourth in order of payment, yet the order of payment of wages and taxes remains unchanged over those set up by the Act of May 27, 1926, c. 406, Sec. 15, 44 Stat. 667. They also show that Section 67, sub. b, 11 U.S.C.A. § 107, sub. b of the 1938 Act creates a category of statutory liens " * * * in favor of employees, contractors, mechanics, landlords, or other classes of persons, and statutory liens for taxes and debts owing to the United States or any State or subdivision thereof * * * ", and contend that Congress did not distinguish between a statutory lien on real estate and one on personal property, contenting itself by providing that such a statutory lien might be valid against a trustee in bankruptcy. The appellees then refer to subsection c of Section 67, 11 U.S. C.A. § 107, sub. c, providing that statutory liens on personal property and liens " * * * whether statutory or not, of distress for rent shall be postponed in payment to the debts specified in clauses 1 and 2 of subdivision a of section 64 [104] of this Act [Title] * * * ", and contend that a distinction in treatment of liens because laid upon real property as distinguished from personal property is a senseless difference which Congress could not have intended.

We cannot accept these contentions. We are of the opinion that Congress has elected to treat personal property and real estate upon different bases. This is clearly one of the purposes of Section 67, sub. c. If there is a statutory lien upon personal property not accompanied by possession or a distress for rent (which is always upon personal property) whether statutory or not, such liens are postponed in payment to expenses of administration and wage claims. If, however, the statutory lien is upon real estate, it is not postponed but is payable strictly pursuant to the provisions of Section 67, sub. b.

Section 67, sub. c does not operate to postpone the payment of statutory liens to general expenses of administration and the wage claims. On the contrary, following the sale of the real property in the case at bar a particular fund charged with the liens was brought into court. The fund thus created must be paid out in satisfaction of the valid liens. To put any other construction upon the amendments to the Act is to do violence to the language of Section 67, sub. c.

The appellees refer to Section 64, sub. a (4) of the Act, 11 U.S.C.A. § 104, sub. a (4), and contend that the provisions of this section operate to prohibit payment of the appellants' tax liens. This is not the case. The prohibition expressed in the section referred to applies where claims for taxes are made against the general assets of the estate, that is to say, assets not subject to liens or encumbrances.

Neither can we accept the contention of the appellees that the wage claims are here protected by liens. There is nothing in the record before us to show that the wage claims were filed in the office of the Prothonotary of Luzerne County in accordance with the law of Pennsylvania. 43 P.S.Pa. § 221. But even if the wage

claims had been filed with the Prothonotary and had thereby been protected by liens, such liens would be secondary to liens for taxes pursuant to the law of Pennsylvania. 53 P.S.Pa. § 2022.

We are unable to agree with the contentions of the appellees, nor can we concur in the views expressed by the learned District Judge. Basing his conclusions upon findings of the special master that the tax assessments and tax liens against the estate (taxes being due the Commonwealth of Pennsylvania, the County of Lackawanna, the City of Scranton and others, as well as the appellants) could not be broken down either as to respective amounts or respective properties, he held in effect that no tax lien, whether county or state, could be paid from the $16,000 fund. The parties stipulated, however, that the Reichard & Weaver real estate was the only real estate of the bankrupt located in Luzerne County at the time of the sale. It was also stipulated that the county and poor taxes of Luzerne County and the Wilkes-Barre city tax were liens duly filed with the commissioners of that county. Such were first liens upon that real estate pursuant to the provisions of the Pennsylvania Act of May 16, 1923, P.L. 207, Sec. 2, 53 P.S.Pa. § 2022, precisely as taxes due the Commonwealth were first liens upon all property of the bankrupt in Pennsylvania under the Pennsylvania Act of April 9, 1929, P.L. 343, Sec. 1401, 72 P.S.Pa. § 1401. Upon the very inadequate record of the cases at bar, however, we cannot tell with accuracy what tax claims are entitled to payment from the fund procured by the sale of the Reichard & Weaver real estate in preference to other tax claims. Since no other taxing bodies than municipalities located in Luzerne County have appealed, it might be concluded that they alone are legally interested in the fund. This is a matter which must be determined in the court below.

 Nor do we accept the proposition that the various tax liens cannot be broken down so that it can be determined on what particular properties or the proceeds thereof the tax liens lie. If these facts cannot be ascertained on the existing record, further hearings must be had for the purpose of clarification. Real estate should not be sold by a court of bankruptcy unless the rights of parties to the fund to be created can be ascertained. Liens are property rights and may not be divested as a matter of procedure. See Britton v. Western Iowa Co.,

8 Cir., 9 F.2d 488, 490, 45 A.L.R. 711. Claims not secured by liens may not be advanced over lien claims tied to a fund because the conditions governing the payment of the tax liens are not entirely clear.

 The District Court also concluded that the appellants could not object to the course of payment proposed in the master's report, the proceeds of the sale of the Reichard & Weaver real estate being made subject to general administration expenses, because they had acquiesced in the method by which the properties of the bankrupt were sold. The example cited by the learned District Judge seems inapposite for we can perceive no reason why the fact that the personal property at the Reichard & Weaver plant was sold with the property and real estate of the E. Robinson plant should militate against the right of the appellants to be charged only with those expenses of administration applicable to the preservation and sale of the Reichard & Weaver real estate. If trustees in bankruptcy are to sell property, they must do so in such a way that the expenses of sale of a particular property may be allocated to the proceeds of the sale of that property. Otherwise they will be held to be surchargeable.

The order of the District Court of January 22, 1940 is reversed and the cause is remanded with directions to proceed in conformity with this opinion.